POOR QUALITY ORIGINAL Eastern District of Michigan
Southern Division

57

Case: 2:25-cv-12861
Assigned To : Edmunds, Nancy G.
Referral Judge: Grand, David R.
Assign. Date : 9/10/2025
Description: JACK CARPENTER III V WARDEN
(LLH)

Case No:

Originating Case No: 23-20152

Petition for a Writ of Habeas Corpus as a
Writ of right under 28 U.S.C. §2241

In Re: Jack Carpenter III

In the format required by U.S. Supreme Court rules. Please do not
return with the non-required standardized form as was done in the
Western District of Missouri, and then they moved me out of District
before I could re-file. Thank you.

Jack Carpenter
⊗

<u>Questions</u>

1. Can the AUSA request an 18 U.S.C § 4241(b) hearing "to establish a reasonable belief" of incompetence because a reasonable belief did not exist?

2. Was defendant denied 6th Amendment right to counsel if 28 U.S.C § 1654 and E.D. Mich. L.R. 83.20(f) prevent an attorney who is not a member of the State Bar of Michigan from pleading the case unless one of two exceptions that are not met in this case occur?

3. If counsel cannot represent defendant, and 18 U.S.C § 4241(a) requires counsel via 18 U.S.C. § 4247, were defendants due process and speedy trial rights violated?

4. If counsel informs defendant that there is a conflict of interest in representing defendant in appeal 23-1661 (See ECF 57 pg Id 301-302) then delays the appeal, tells defendant it was dismissed, refuses to send any documentation regarding the appeal, in hopes the appeal is rendered moot, is that ineffective assistance of counsel?

5. In ECF 57 pg Id 301-302 counsel states that he disagrees with the AUSA about competence, defendants appeal is "non-frivolous", and that if he wins it proves competence. After delaying the appeal for 2 years he files an Anders Brief arguing there are "no non-frivolous arguments" and the Court lacks jurisdiction because it is a non-final order. Defendant argues that a competency evaluation is appealable under collateral order doctrine. The 6th Circuit adopts defendant's argument, then dismisses the appeal as moot because counsel requested it be delayed until after the

hearing, and once the hearing took place, the argument was moot, which is exactly what defendant accused counsel of doing. Is that ineffective assistance of counsel?

6. If defendant can only be sent for a competency evaluation "not to exceed 30 days", but was kept longer than 30 days, do those days count against the speedy trial clock as they cannot be considered "reasonably related" to the issue of competency?

7. If bed space for restoration procedure under 18 U.S.C. §4241(d)(1) is a 6 month wait because the facility keeps everyone for longer than the time limit "not to exceed" 120 days, can it be considered a "reasonable delay"? The statute says "a reasonable amount of time" and that it is "not to exceed" 120 days. Is the phrase "a reasonable amount of time" rendered moot by the practice of keeping everyone for 120 days plus whenever they get around to writing a report? Defendant was held for 156 days, and was sent back after serving a Petition for a writ of Habeas Corpus on the warden and Attorney General. Many are kept longer. How can a 6 month wait for a bed be "reasonable" when the beds are full because they ignore the statutory time limits? How can this 6 months be considered "reasonably related" to competency?

8. If defendant's max recommended sentence is 0-6 months, and 18 U.S.C. §4241(a) and (d)(1) allow for a 30-day delay and another 120 day delay, is it unreasonable for the Court to take ~31 months for this 5 month process? Defendant has been incarcerated over 5 times his sentence, and the court is unsure if allowing him a trial violates his due process rights, yet clearly he has been excessively

punished without due process.

9. If defendant was in low security General Population for 18 months, then sent to Missouri where they placed him in Solitary confinement as a method of torture to coerce "Voluntary medication" for 105 days without cause. Defendants plans would render him in a camp or simply released on probation if convicted, was defendant punished absent due process? Was that punishment cruel and unusual?

Another inmate was found not guilty for reason of insanity for murdering two people. He spent **0** days in solitary on arrival. Another inmate committed armed robbery and was in a shootout with police, he spent 1 days in solitary on arrival. Defendant was told the facility has a policy that no one comes out of "F" pod until they agree to take meds. Under oath Dr. Turner lied and said it was concern for my charges. Why was I in general population in every other facility? 13 facilities in 5 states, after 18 months there is suddenly magical concern.

10. Defendant is accused of communicating a threat that was transmitted in interstate commerce. Defendant placed an entry in a database server in Texas, from Texas. He did so accessing a free wireless hotspot nothing crossed state lines, it was purely intrastate and void of an act of commerce. 18 U.S.C. § 875(c) does not employ the phrase "in or affecting" interstate commerce, it clearly states "transmits in interstate commerce". How does an act void of commerce, that is purely intrastate, meet the subject matter jurisdiction of 18 U.S.C. § 875(c)? How is the territorial jurisdiction of the Eastern District of Michigan triggered by a purely intrastate act in Texas? The FBI office in Michigan sending its own separate query to the Database Server in Texas stretches the definition

of transmit in interstate commerce to mean something nonsensical.
Defendant transmitted text to a database server in Texas. It was sent by defendant nowhere else.

To point out the absurdity in the FBI and MUSA claiming the Eastern District has territorial jurisdiction, if the FBI queried the database server again today, did defendant retransmit the communications? Because it would have to be resent. What if they drove to the Western District of Missouri and then sent another query? Would that allow another charge then in that District?

Defendant transmitted one communication, and he was neither in the Eastern District nor was the server he interacted with. The word "Michigan" being in the text sent does not create magical jurisdiction in Michigan.

11. Does the US. government determine the existence of a foreign nation? Or does the "right of self-determination" mean that a nation self determines its own existence?

12. What is the distinction between a nation, a de facto state, and a recognized state under International law?

13. Must a nation be a State? What is a "Wandering Nation"?

14. If a nation must have the right to property to obtain territory to become a State, whether de facto or recognized, then a nation must exist prior to a State. Does a nation acquire the right to Independence, dignity, and equity at the moment it exists or does it have to wait until it acquires property? If it must wait until it acquires a territory,

is it required to ask permission to acquire territory from some superior since it lacks Independence?

15. Does the United States determine for a foreign nation where and in whom its Sovereignty resides?

16. Can a wandering nation choose for itself a King? Or does it need to ask a U.S. District Court to do this?

17. Why is it called the "Law of Nations" and "International Law" and not the "Law of States" and "Interstate law" unless "nations" have rights, not "states", since a state is just a nation with territory?

18. Since exterritoriality (Sovereign Immunity) must be given to a State whether de facto or recognized, and exterritoriality is a necessary consequence of the absolute equality of sovereigns under the Law of Nations, And Independence, Equity, and dignity flow from existence, not recognition, and "nations" have sovereigns, not State, doesn't logic dictate that Sovereigns of wandering nations must be afforded exterritoriality?

19. Is the act of the US State Department discussing the borders of a de facto state, and entering negotiations to normalize procedure for obtaining non-immigrant visas to enter into the United States considered "implicit recognition", irrevocable, and binding on US Courts?

20. 21 U.S.C. § 360bbb-3 is the expanded access protocol for Investigational New Drugs

21 CFR 312 is the code of regulations for licensure of Investigational New Drugs. All medication available for EMERGENCY USE AUTHORIZATION (EUA) is licensed under 21 CFR 312, as they are in clinical studies and not FDA approved for general use. 21 CFR 312 I prohibits advertizing Investigational New Drugs as "safe" or "effective" for what they are in clinical trials for. This prohibition applies to Investigational New Drugs made more widely available under EUA.

   a) Is it fraud to claim an IND is "safe" or "effective" while in clinical trials, like when the COVID mRNA injections were called "safe" and "95% effective"?

   b) Is the AUSA claiming this is "a delusion" evidence the AUSA is participating in the cover-up of fraud?


21. In September 2021 Pfizer received FDA approval of a product called "ComRNAty" using data from EUA use in violation of 21 U.S.C. § 360bbb-3. In the FDA approval letter, in fine print, it explains that there is "FDA approved ComRNAty and "EUA approved" BIONTECH. It refers to BIONTECH as "legally distinct, but medically similar" to ComRNAty.

   Pfizer informed the CDC that it had no intention of manufacturing the FDA approved ComRNAty, and would only manufacture the "legally distinct" EUA BIONTECH injections. No FDA approved ComRNAty was publicly available until after May 11, 2023 when the Secretary of Defense declared the pandemic over.

   Cases out of this district like Norris v. Stanley, 561 F. Supp. 3d 478 (W.D. Mich 2021) are clearly in error as they rely on the false understanding that an FDA approved version was being "mandated". Is this intentional misleading of the Public and Courts "Fraud"?

22. In Elonis v. United States, 135 S. Ct. 2001, 192 L.Ed.2d 1, 575 U.S. 723 (2015) the Supreme Court cites Webster's New International Dictionary 2633 (2d ed. 1954) to define "THREAT" as "Law, specif., an expression to inflict loss or harm on another by illegal means." They also explain that "a defendant must be 'blameworthy in mind' ... a concept courts have expressed over time through various terms such as mens rea."

Elonis clarifies that the mens rea element of 18 U.S.C. § 875(c) is not whether a reasonable person would perceive the communication as a threat, but that whether or not defendant intended to express harm on another by illegal means. This inherently excludes an intent to express harm on another by legal means.

Is it illegal to use "words" with an intent to stop the ongoing commission of fraud? Is it illegal to use "words" with the intent to stop the unlawful act of coercing people to take experimental medication?

23. Can an 18 U.S.C. § 4241(b) evaluation be ordered after an 18 U.S.C. § 4241(a) hearing?

# Table of Contents

Jurisdiction ........................................... Pg. 1

Statement of the Case ........................... Pg. 3

Reason for granting the writ ................ pg. 27

Relief Requested ................................... pg. 45

Conclusion ............................................ pg. 46

## Jurisdiction

This Court has jurisdiction under:

28 U.S.C. § 2241 (c)(1-4)

Petitioner is not sentenced but in case 23-1661 where petitioners jurisdictional claim was adopted over counsel's in Ander's Brief, and the Court found that committment under ~~$████████~~ 18 U.S.C. § 4241 (d)(1) was no longer in effect, instructed petitioner that 28 U.S.C. § 2255 was the appropriate method to bring claims. Petitioner will make the claim the Court has jurisdiction under §2255, but since he is being denied a trial and is thus "not sentenced", that §2241 is the most appropriate.

## Statement of the Case

In 2019 Pfizer, a corporation controlled by Zionist Israelis, paid the largest criminal fine in U.S. history for "lying about what its products do, falsifying safety studies, and bribing doctors." Shortly after, in September 2019, Donald Trump signed an Executive Order to "update vaccine manufacturing processes" which section 4 tasked Dr. Fauci at the National Institutes of Health (NIH) to create a group and develop a plan to "manufacture public demand" and "manufacture public funding" for new vaccine technologies like cell therapy (mRNA).

Shortly after, the company Eco-Health Alliance, a corporation controlled by Zionist Israelis which received funding from NIH to do "gain of function" research on Coronaviruses in Wuhan Labs China, requested funding from DARPA to "release a human engineered Coronavirus into the bat population in China."

In December 2019 a Coronavirus never seen before in nature jumped from bats to humans by Wuhan Labs in China, causing what is known as the "COVID 19 pandemic." This led to the initiation of "Operation Warp Speed" by Donald Trump to use public funding by US tax dollars for the research, development, and manufacturing processes for experimental

mRNA vaccines. The mRNA technology was invented by Dr. Robert Malone. Dr. Robert

Malone was the understudy of Zionist vaccine inventor Jonah Salks who wrote, "Survival

of the Wisest", a book about selling a poison to the public by convincing them it was

necessary for health as a scheme to reduce the human population, and the only people

to survive were the people "wise enough" to know they were being lied to.

Operation Warp Speed was used to fund "new vaccine technologies" for 3 companies

selected by the Secretary of Defense: Pfizer, Moderna, and Johnson & Johnson. Each of

these companies licensed an "Investigational New Drug" (IND) also known as "Experimental

medication in clinical trials" under 21 C.F.R. 312. They then applied for "Expanded Access

protocol for Investigational New Drugs and Diagnostics" also known as "Emergency Use

Authorization" (EUA) under 21 U.S.C. § 360bbb-3.

21 C.F.R. 312.7 prohibits advertising of an IND, even if under EUA as "safe" or

"effective" for the use it is in clinical trials for as it is considered experimental. 21 U.S.C.

§ 360bbb-3 prohibits the use of EUA data when seeking FDA approval as they are

not a part of controlled studies.

In March of 2020 the US government implemented a strategy to use social media companies to suppress any speech, even if true, that would affect an individual's decision to take the COVID 19 injections authorized under EUA. Thus completing the plan under Executive Order to manipulate the public into demanding the US government fund mRNA technology, and manipulate the public into demanding the use of mRNA technology.

In March of 2020 it became public knowledge that like HIV and AIDS, that there is a distinction between SARS-cov-2 and COVID 19, and that "prevents COVID 19 does not mean "immunize against SARS-cov-2 infection". FOIA information requests to the CDC show high level discussions that the COVID 19 injections do not immunize against SARS-cov-2 infection, they "reduce risk of hospitalization", hence "prevent COVID 19". This is like saying that medication does not prevent HIV infection, but reduces the risk that HIV develops into the disease AIDS. The CDC decided to

change the definition of "vaccine", and remove the words "prevent infection", and replace it with "prevent disease". This way they could continue to call the injections a "vaccine" despite knowing they do not provide immunity from infection. In October 2022 Pfizer CEOs testified under oath in the European Union that the injections do not generate immunity, were not licensed to prevent SARS-Cov-2 infection, nor were tested for that use. This is fraud coordinated between the Trump White House, the Secretary of Defense, NIH, CDC, Pfizer, Moderna, Johnson & Johnson, and Eco-Health Alliance.

In September 2021 the FDA approved Pfizer's "ComRNAty" COVID 19 injections using data from EUA use studies in violation of 21 U.S.C. § 360bbb-3. The approval letter from the FDA explains in fine print that Pfizer has two distinct products: the FDA approved ComRNAty injections, the "legally distinct, ~~but~~ medically similar" EUA BIO-N-TECH injections. Pfizer informed the CDC they had "no intention" on manufacturing any FDA approved version, and would instead continue to only manufacture the EUA BIO-N-TECH

product. An FDA approved version was not available for public use until after May 11, 2023 when the Secretary of Defense ended the COVID 19 pandemic, and stopped all funding of mRNA EUA injections. Norris v. Stanley, 567 F Supp 3d 818 (W.D. Mich 2021) incorrectly holds that Michigan State University (MSU) policy forcing people to take EUA medication was lawful because Pfizer had an FDA approved version. An approved version only existed on paper. The Biden White House directed people "What are you waiting for, they are FDA approved?" This led to businesses and government requiring EUA medication that did not provide the communal benefit of immunization in order for people to feed their families under the guise that it was a fully FDA approved immunization. This is fraud, and a grave violation of International Law.

In December 2021 defendant was fired after 16 years of public service for refusing to take experimental medication with no communal benefit. He began to pursue criminal charges against the perpetrators of this fraud. As it was clear those administering the government were not only complicit in these crimes, they were

perpetrating them and using the same system to insulate them from culpability, defendant attempted to file a criminal complaint, and proceed as the prosecutor in the 15th District Court of Ann Arbor. After 11 months of filing arguments in the District Court, and the Court having to contact the Michigan Supreme Court Office of Administration 5 times, the District Court informed defendant, "You are absolutely right about the law, but we have to wait for guidance from the MSCOA because there are no court rules to guide us, and no one has ever used the law this way."

On October 25th and 27th of 2022, defendant had a probable cause hearing for arrest warrants appearing as the prosecutor in a criminal case in the 15th District Court of Ann Arbor. However, the judge ruled that he was aware the medication was legally considered experimental, but it was "just a matter of policy" to force people to take experimental medication. The case was then sealed.

Defendant decided that in order to eventually hold the perpetrators of these criminal acts of International Terrorism and to bring an end to the fraud being

perpetrated by government officials was to cause his arrest to bypass a probable

cause hearing using the defense that his behavior was necessary to prevent

the ongoing commission of felony fraud, international treason, and crimes against

humanity. Which leads us to this case.

Defendant is aware of facts which allow one to conclude that the COVID-19 pandemic

was an intentionally caused incident perpetrated by Zionists as an elaborate scheme to

launder money from the treasuries of all the nations of the world through Zionist

controlled corporations to facilitate a military objective leaked by a retired U.S. General

in 2001 to overthrow or destabilize the governments of Iraq, Afghanistan, Lybia, Yemen,

Lebanon, Syria, and Iran while economically collapsing Russia then annex the Gaza

Strip and West Bank for Israel to "recreate Biblical Israel." To put it bluntly, release a

biological weapon as a pretext to develop funding for a Zionist Holy War.

In relation to question 22, this is a question for a jury, not the AUSA, District

Court judge or psychologists that work for the government. Defendant is not mentioning

this new for any other reason than to argue that defendant alleges he had the innocent intent of stopping the ongoing commission of criminal behavior by others, and therefore lacked mens rea of the charged offense, and he is entitled to prove that to a jury without first having to prove it to a psychologist while not being able to present evidence of this claim. The government is using government psychologists to simply declare this a "fantastic delusion", thus substituting themselves for the jury.

On November 11, 2022 defendant emailed a Declaration of Sovereignty (or Independence if you prefer) to the U.S. Joint-chiefs of staff, U.S. Congress both House and Senate, Department of Justice, Michigan State Police, 2 County Sheriffs, Michigan Congress both House and Senate, Michigan Governors office, 2 ministers of the U.N. Security Counsel and others. Under the Law of Nations, this notice is "customary" but not required.

In December of 2022, defendant called the U.S State Department to explain

that the nation that self-declared its existence on 1-11-2022 was laying claim to 9 sq. miles of territory formerly belonging to Michigan under two theories of International Law. That through internal acts of the new nation, defendant was invested with its Sovereignty, and wished to diplomatically negotiate a process to cross its borders into US territory via non-immigrant visa. The State Department personel was "shocked" that the U.S. Government had not responded, agreed that the Law of War and Law of Nations was followed. Defendant was placed on hold for 20 minutes, and the State Department personel returned with a method to request a non-immigrant visa for citizens of this new nation. Defendant reminded the State Department personel that there was not a U.S. Consulate in the new nation, so a method to perform the "in-person interview" US Law requires needed to be accomodated. She laughed and said she didn't even think about that. Put defendant on hold, and came back with a 1-800 number to call when someone got to that step.

The AUSA contends that the State Department has no record of this call, but defendant's phone bill shows that it occurred. Defense Counsel for some reason argued "He probably spoke to a low level employee" as if that somehow negates the implications of this diplomatic exchange where the Office of the Executive tasked with foreign affairs discussing the border of a new State, and normalizing diplomatic relations by negotiating a process to cross borders isn't "recognition".

Regardless, defendant argues that under the Law of Nations and Common Law that the Sovereign of a foreign nation, whether it is a "Wandering Nation", "de facto State", or fully "recognized State", is entitled to immunity and is unable to be put through the Courts of a foreign government.

In order to defeat the two defenses presented so far the U.S. Attorney is accusing 18 U.S.C. § 4241 to both have the Court avoid the question entirely while also have the Court declare them "delusions" because a government psychologist declared them delusions. In December 2022, defendant stated on Twitter (now X), "I know

the plan is to try to make me look insane. I could have left everything about Tarot off of here. But I want you to concentrate on that in court while I stick to facts about COVID. Good luck figuring out when I am playing the part." 3 months later, defendant was arrested, and the government moved for competency evaluation, citing as evidence:

1. Defendant's belief in Tarot and a quote from Revelation 21 in the Bible
2. A plea challenge to jurisdiction of the court
3. A lay person opinion defendants religious beliefs are too extreme

The AUSA also tried to argue there that 21 CFR 314.81 prohibiting Pfizer and the sponsor (US gov.) from claiming it's named drug are safe or effective is "a delusion." One of the experts said, in Tarot, believed the defendant claiming religious belief the prosecutor mentioned was itself evidence of incompetency, then admitted she had no idea what mens rea is.

On June 6th, 2023 the Court held a competency hearing absent a bona fide doubt of competency being lacking. 18 U.S.C. §4211(b) allows for an evaluation "prior to the hearing" if a reasonable doubt of incompetence exists. As a result of the hearing, the

Court stated, "Defendant may well be competent, but a discretionary evaluation that should have occured prior to June 6th was now somehow required as a result of the hearing. Defendant filed pro se appeal 23-1061 and now argues that the Court had no authority under 18 U.S.C. § 4241(a) to deny speedy trial rights to send the defendant for an evaluation after the 18 U.S.C. § 4241(a) hearing on June 6th, 2023.

During the June 6th hearing that was initiated absent a reasonable belief of incompetence, defense counsel argued:

1. Defendant was predicting the AUSA's arguments, filing rebuttles prior to the AUSA making the arguments, and then the AUSA does indeed, make these arguments, "Clearly he is competent."

2. Defense Counsel is confident in his ability to proceed pro se.

3. Nothing the government argues equates to a reasonable belief nor a bona fide doubt of competence.

Defendant addressed the Court and explained his interaction with the State Department. The Court raised a challenge to jurisdiction due to suggestion, and ordered the AUSA to file facts and law to support the argument the Court has jurisdiction.

Despite the government summarizing defendants challenge to jurisdiction as "evidence"

of competence and filing the Declaration of Sovereignty sent to the court first day, which contains a section "legal claim" explaining the law in question, the AUSA feigned ignorance of the argument. The AUSA claimed that defendant's challenge was struck by the Court due to 28 U.S.C. § 1654 "tried defense, that no court the lawful access to the argument, and asked defense counsel to refile it. Defense Counsel argued that "it does not take away from the challenge of jurisdiction" for the Court to first exercise jurisdiction over competency, then later look back to see if it ever had jurisdiction at all. This creates 3 issues:

1. If the Court lacks jurisdiction for a trial, it lacks jurisdiction to determine competence for said trial, and the Court has a duty to raise the issue of jurisdiction sua sponte when it is made aware it may be lacking.

2. The government raised the issue to jurisdiction themselves by filing the argument as evidence of incompetence.

3. Defense Counsel is prohibited from pleading defendant's case by E. D. Mich. LCrR because L.D. Mich. L.R. 83.20 (a)-(j) prohibits counsel from appearing before the court absent "local counsel" or a per case waiver because he is not a member of the State Bar of Michigan.

the Court accepted Defense Counsel's argument, and ordered an evaluation under 18 U.S.C. § 4241(b) as a result of the § 4241(a) hearing. Defendant filed appeal 23-1661 under collateral order doctrine. He was sent to the farthest facility possible in violation of 18 U.S.C § 4247 4247, and was held for longer than the statutory period "not to exceed 30 days". Defendant was released from custody on September 25th, 2023, the day the brief for appeal 23-1661 was due. This was done so the government could argue the appeal was moot because the evaluation was over, while then having a second (and then third) 18 U.S.C § 4241(a) hearing using the forensic report generated illegally. As of August 11, 2025 defendant has been subjected to 4 hearings under 18 U.S.C. § 4241(a), but only the hearing on June 6th, 2023 was initiated by motion as required under 18 U.S.C § 4241(a), denying defendant "notice" under due process for the other 3. The hearing on June 6th, 2023 was held absent a bona fide doubt of competence as required.

Defendant refused to participate in the evaluation citing a 5th Amendment right

not to aid the government in an investigation to deny the right to a denied appeal 23-hour, and he was unlawfully sent for evaluation. Dr. Nybo filed a report anyway claiming that appeal of this was "a delusion", defendants religious beliefs as interpreted from Twitter posts, "unintelligible legal jargon" the 6th circuit and US Supreme Court understands, defendants "fixation" on a "COVID-19 compensation", and a belief the U.S. State Department targetted him via the Qanon conspiracy, also despite never arrested he has not been incarcerated for 11 years somehow, equate to incompetence.

No such jargon at law exists, as ECF 51 pg 311-312 shows. Defense Counsel clearly understood defendants legal jargon, whether or not a COVID-19 compensation exists is a question for the jury, and Dr. Nybo claim about Qanon and the State Department is the defendants incarceration for 4 years, Dr. Nybos self "accuracy with facts are groundless. None of this explains how delusion is incompetent other than in the world of "expert forensic psychiatry", a diagnoses of "delusional disorder" means a person cannot be competent unless they are on psychiatric medication. Dr. Nybo testified

that he had no evidence that defendant's beliefs are untrue, which is actually a requirement to declare a belief a delusion. But Dr. Doyle is loose with facts, a delusion to him is "anything I don't believe" as can be seen with the claim appeal 23-1661 is "a delusion".

Defendant is a Cyber Security and Computer forensics expert who graduated with honors and was top of his computer forensics class. He is trained by law enforcement in forensics and was in the highest tier of IT for the University of Michigan, personally responsible for the security, management, and infrastructure of over 10,000 systems. He is an expert in both Linux and Microsoft Operating Systems. His beliefs about the internet personality "Q" are based on his skillset in computer forensics. They are elaborated in a Petition for Writ of Mandamus at the U.S. Supreme Court filed in March of 2025, and Defendant infers that this filing led to the termination of the U.S. head of Cyber Security less than 1 week after it was served to the Solicitor General. The Director of the NSA, Deputy director, a team of

individuals at the NSA, and 3 members of the Pentagon were fired after that court filing. considering the context and the positions of these individuals, it is more than likely related than unrelated. To summarize, the following is readily available fact not subject to be reasonably dismissed:

The internet personality "Q" claims to be "US military Intelligence" with "Q level security clearance" (DOE Nuclear level). He claims to access the 8 Kun server to update his followers from the DOD network 11.11.19.0. He claims to be trying to rid the U.S. government of "Satanists who sell children for sex and cannibalize them". He claims the "elites" buy and sell children using codenames like "pizza slice" and "Hot dogs", and was the origin of the "PizzaGate" theory. He claims Donald Trump was recruited by Military Intelligence to run for office to seize the power of "Commander In Chief" as a U.S. Intelligence Manchurian Candidate. He replied directly to anonymous users asking him to have Donald Trump use absurd phrases in his campaign speeches, and a couple of days later Donald Trump would say the phrase

requested. He would also take many pictures standing in front of the number 17. **Q** is the 17th letter in the alphabet. Small things like this done over a period of years caused people to trust that this person was Military Intelligence working with Donald Trump against the **"Deep State."** This was a modern day variation of **Operation Mincemeat** from WWII, using the Internet to create a persona instead of dropping a dead body with manufactured credentials. The Q user stopped posting shortly before January 6th attack on the Capitol and was in large part responsible for that event.

In December 2022 defendant sent an email using the word "prophet" to the joint chiefs of staff. The Q user re-activated after a year of silence to say:

"I am not a prophet,                          Find the [MAP].
you are not a prophet,          and     Find the [KEY]"
we are not prophets,
Stick to the plan"

Defendant went to post on the "Xbox server as a reply: "I don't know who you are, nor do I trust you," and the Xbox server "banned defendant's IP Address stating he

uses rough spinning, for paedophilia content on the screen. This pissed defendant off, and so he spent the next two days "finding the [MIN], and finding the [KISS], and then he posted it on Twitter.

In Q posts you find pages like, [MAP], [KEY], [RED], [YELLOW], [GREEN], etc. If you search the HTML Code that your user browser renders the page source to you) of section Q related material, there are instructions for followers at Qx. For instance, a search of "all lines matching [GREEN]" may tell user to go visit a "Green Church" and ask for a certain person, "all lines matching [RED]" is a story about Donald Trump's uncle ████ possession of Nikola Tesla inventions including EMP technology to control people, or "all lines matching [YELLOW]" is a story about the earth being in a battle with aliens and Q and Trump are a part of the "Galactic Federation", a federation of alien races fighting "the bad ones" to "ensure humans remain free. Code to reproduce this, and screenshots were posted on both, hosted by defendant's Google Drive.

The argument at the US Supreme Court is that "Dr. Nybo cannot be an officer credible at all that this is a delusion, defense counsel refuses to hire a computer forensics specialist to verify this one as a fact, and the District Court claims it is "unwise" to require that the AUSA comply with Federal Rules of Evidence 1006(b) to prove a delusion is both false and that defendant cannot amend the belief when confronted with evidence. To prove a belief false, the Court can simply assume it is false. Defense Counsel argues "it is not my job to prove you are sane, it is the AUSA's job to prove you aren't."

It is defendant's belief that filings like this are why Dr. Fauci and the Chairman of the Joint-chiefs of Staff recently received a "pre-emptive pardon."

In ECF 51 pg 301-302 Defense Counsel explains that appeal 23-1606 is "non-frivolous". That he disagrees with the AUSA requesting an evaluation, that if defendant won the appeal it proves competence, and that Defense Counsel is precluded from representing defendant in the appeal as the argument creates a

conflict of interest. Defendant informed counsel to remove himself from the case. Instead Counsel requested the appeal be held in abeyance until after the next 18 USC §4241(a) hearing, told defendant the appeal was dismissed when it was not, and refused to send any documentation regarding the appeal. His office accidentally sent the 4th and 7th letter requesting the appeal be held in abeyance, which informed defendant he was lied to.

As a result of Dr. Nixon faulty report, the Court remanded defendant to "restoration procedures" under 18 USC §4241(d) claiming he was "unable to assist in his defense". Defendant filed a Petition for Writ of Habeas Corpus in the US Supreme Court, case no. 1351. The Petition argues defendant's claims of Sovereign Immunity and the illegality of defendants commitment. The petition was screened under 28 USC §1915(e)(2)(B) for a determination it was "non-frivolous", "potentially meritorious", and "relief requested was within the Courts power to grant." It was also screened under the Federal Rules of Habeas Corpus procedure. After

passing, it was filed on May 29, 2024 and given a docket number. As a result of question #17, the White House revoked all federal funding to Eco Health Alliance, and the House Intelligence Committee held a hearing 5 days later on the origin of SARS covid to discuss U.S. Intelligence Agencies stonewalling Congress on the origins and the role of Eco-Health Alliance in causing the pandemic. One member told Dr. Fauci "you should be prosecuted for crimes against humanity." The petition was dismissed under rule 204(b) as not a decision on the merits, argument preserved for lower courts.

Defendant was led to believe he got a bed in M.C.F.P. Springfield because they will have me sent there for longer than 18 U.S.C § 4241(d) allows because there is no recourse for this blatant disregard of the law. The law states "a reasonable amount of time" that is "not to exceed" 120 days. Clearly congress did not intend that to mean that everyone "be kept for 120 days", and then also until whenever they get around to filing a report. A review of caselaw on this issue shows that when this issue is

_____ on defendants, the Court agrees the law is broken, then basically concludes, "Oh well, sorry about your luck. We aren't going to stop it." The Facility recognizes this for what it is, so they just do as they please. Defendant was there for 156 days, and wasn't released until he served the Warden and Attorney General a _____ Corpus Petition. Others are kept longer.

At the time of _____ sent to M.C.F.P Springfield defendant had been _____ and in low security general population for 13 months, his max recommended sentence is 0-6 months, and 18 U.S.C. § 4241 (a) - (d)(1) a _____ for a rate delay of speedy trial clock for 150 days or 5 months. So at the point there are 13 months of unaccounted delay for _____ Defendant had been illegally punished and served 13 months sentence without a trial. Then M.C.F.P. Springfield placed defendant in solitary confinement for 102 days. Once a week 2 _____ would stop at his cell to ask:

1. "Do you _____ to _____ yourself or others?"
2. "Do you need medication?"

Pg. 25

Then he would be ignored for a week. On day 6's he was given a short

interview with questions like:

    1. What types of pleas are there?
    2. What is the role of a judge?

Then he was moved from "F pod" to "I pod" where every other day you are locked

in solitary confinement for 24 hrs instead of the normal 23 hrs, and they also

handcuff you when they let you out to shower 3 times a week. The case manager

Ms. Payes informed defendant this is because the facility has a rule that if you

refuse "voluntary medication" then you are kept in solitary confinement. Staff

also explain that the facility will not grant a certificate of competency without

medicine. Dr. Rice told defendant he should choose to take meds because they

will cause him to just plead guilty and get on with his life. There is something

very wrong with the culture of this facility. It needs to be investigated.

    After 165 days defendant was moved to "T pod" or general population, was told

he was "not restored", and the facility was holding a "Harper hearing" as a pretext

For a little less, to tour medicals detrraned. 20 minutes after the Hope hearing defendant met with Dr Turner for the second and last time.

After Filing a Petition for habeas corpus in the Western District of Missouri arguing that the 120 days expired under 18 U.S.C § 4241(d)(1) and no extension was granted under § 4241(d)(2) which required release from the custody of the Attorney General, defendant was told on April 23, 2025 that he was "released from the custody of the Attorney General, which only happens if you are found competent, congratulations." But defendant knew that the Attorney General recognized that there was no statutory authority to hold defendant, and the Court was going to order defendant's release from Attorney General custody so ore ordered his release. He also knew what Dr Turner concluded. Defendant was then forced to wait another 20 days for a hearing, which turned out to be another 18 U.S.C §4241 (a) hearing based on a motion prompting it using a report by Dr Turner that was not required under any law

Defendant arrived at M.C.F.P Springfield on November 18, 2024. The statutory period "not to exceed four months" expired on March 18, 2025. No extension was granted by the Court under 18 U.S.C. § 4241(d)(2)(A). The facility recommended on April 16, 2025, almost a full month after, that defendant can be restored with forced medication. Apparently Dr. Turner believes defendant can be rendered able to "assist in his defense" as soon as they can medicate him into a State where he no longer believes facts acknowledged by the House Intelligence Kommittee on June 3rd, 2024 that Dr. Turner is too lazy or inept to verify as truth. Or maybe she just has "fixed false beliefs, not amenable to change base on the introduction of contradictory evidence" and suffers from "delusional disorder." Either way, the statutory time period for 18 U.S.C. § 4241(d)(1) expired on March 18th, 2025, and defendant is "no longer in the custody of the Attorney General." (See ECF 249 pg. 1276 paragraph 2)(See also appeal 23-1661 pg. 3 paragraph 3 "[Defendants] competency evaluation and associated commitment have been completed.")

## Reason for Granting the Writ

18 U.S.C. §4241 calls for a hearing in two places; in section (a) after _____ is filed to determine competency of defendant; and section (e) if defendant is committed under section (d)(1) or committed is extended under (d)(2) and the Director of the facility in which defendant is hospitalized issues a certificate of competency. A psychological report is mentioned in two places; in section (b) if the Court sends defendant for a discretionary evaluation prior to the hearing in section (a) the Court can order a report; and section (e) after a certificate of competency is filed by the Director of the facility in which Defendant has been committed under section (d)(1) and (d)(2). If Congress mentions something in one section of a statute, and does not mention it in another, this is done with intent. Between section (d)(1) and (d)(2) neither a hearing nor psychological report is mentioned.

The proper reason for §4241 is that a motion is filed requesting a hearing, if there exists a reasonable belief at this time of the _____ that defendant is incompetent, the Court is required to set a date for the hearing. If the Court deems it necessary or helpful

the Court can order a discretionary psychological evaluation and report, but this is not required. If an evaluation is ordered, it must occur prior to the hearing.

In this case the AUSA filed a motion requesting an evaluation under §4241(b) and clearly stated the evaluation was for the purpose of establishing the reasonable belief under §4241(a). If a reasonable belief does not exist already, the AUSA cannot ask the Court to order defendant be evaluated by a government psychologist to manufacture the evidence for a hearing. When granting the government's motion after the June 6th, 2023 hearing, the Court stated "defendant may well be competent" showing that there was no "reasonable cause" to believe defendant was presently "unable to understand the nature and consequences of the proceeding" or presently "unable to assist in his defense". This is further shown by the fact that defense counsel has consistently argued defendant is not to assist in his defense, and the sixth circuit court of appeals adopted defendants argument of jurisdiction over counsels argument in the Anders brief filed in appeal #3-1161. One cannot be "unable to assist in his defense" while also making

sup[...] legal arguments than counsel in [...]. In appeal 23-1661 document 41 defense [counsel] state in this notes that defendant's argument [...] 81661 and E.D. Mich. LR. 83.20(f) prohibit counsel from pleading defendant's case is "clever", "novel", and "as far as anyone can tell, never been argued before." How does one make "clever" and "novel" legal arguments, defeat counsel's arguments over jurisdiction in an appeal, while also have "concrete intellect so deficient as to render a trial impossible"? The suspension of speedy trial rights to send defendant to a psychological evaluation "to establish 'a reasonable belief'" defendant is incompetent is a violation of procedural due process and speedy trial rights. The fact that the Court held a competency hearing on June 6th, 2023 and then sent defendant for an evaluation further compounds this issue.

18 U.S.C. § 4241(b) allows for a delay for 30 days for an evaluation. The AUSA filed to request an evaluation in March 2023, the Court did not have a hearing after the evaluation and issue an order until May 2024. To delay the case for 30 days for an evaluation, hearing, and ruling, it took ~14 months. Defendants max recommended sentence under

the sentencing guidelines is 0-6 months. By the time the Court determined that it would violate defendants due process rights to allow him a trial defendant served twice his sentence without a trial. This is a violation of his substantive due process rights, and his speedy trial rights as it cannot be said a 14 month delay for a 30 day process is reasonable. The fact that he was held in Seatac for longer than 30 days compounds this issue.

   The timely appeal 23-1661 being held in abeyance by an attorney with a self declared conflict of interest until "after the hearing", and then being declared moot because "the hearing already occured" and "no relief can be granted" meets the criteria for ineffective assistance of counsel. Counsel labored under a conflict of interest, and the presumed prejudice can be clearly articulated. The fact that ECF 57 pg 301-302 shows that he found the appeal "non-frivolous" then when he could delay it no longer in 23-1661 document 41 he argues the Court lacks jurisdiction and there are "no non-frivolous arguments". show his intent to delay the appeal and have it dismissed for either

mootness or lack of jurisdiction because his actions on June 6th, 2023 would subject him to discipline. The Court recognized defendant's challenge to jurisdiction claiming Sovereign Immunity, and he waived it arguing the Court should first exercise jurisdiction then later check to see if it had the power to act. That turns the concept of jurisdiction on its head. It is worse that E.D. Mich. L.R. 83.20(f) prevents him from being assigned counsel without either a per case waiver or "local counsel", as he is not a member of the State Bar of Michigan. Defendant was clearly denied the 6th Amendment right to counsel. 18 U.S.C. § 4247(d) requires it for a § 4241(a) hearing by § 4241(c).

   Defendant waiting 6 months for a bed at M.C.F.P. Springfield is unreasonable. 18 USC. § 4241(d)(1) states that a person can be committed to the custody of the Attorney General for "a reasonable amount of time, not to exceed four months". This time is to determine if there is "substantial probability" defendant can be rendered competent. From this we can discern that this time period varies per person, it should never take longer than four months,

and four months is unreasonably long for a usual case. Within this time period, one of the following needs to occur:

1. A certificate of competency issues to the Court.
2. Facility recommends defendant can be restored and the Court issues an extension
3. Facility recommends defendant cannot be restored the Court begins the process to dismiss the charges.

From the statute an extension happens one of two ways. Under (2)(A) the Court finds a fact, and grants an extension. Under (2)(B) the extension is automatic to facilitate the time to dismiss the charges. In this case, at 156 days, no extension was granted as the facility made no finding within the time period specified. They do this to everyone. They hold them for longer than four months, until they get around to filing a report that isn't mentioned anywhere in the statute. Beds are full because they ignore the statutory time frame.

You can see in 18 U.S.C. § 4246(a) that the facility can issue a certificate for civil commitment if a defendant is in the facility under §4241(d)(1) or (d)(2) (A) or (d)(2)(B) or shortly after the case is dismissed under (d)(2)(B).

But no provision of 18 U.S.C. §4241 or §4246 allow for a defendant to be committed

solely for determination of a §4246(a) certificate.

Defendant waited 6 months for a bed because the facility ignores time

restraints, was held for 156 days and the facility made no recommendation to

the Court, no extension was granted. Then defendant had to wait another 89 days

for a hearing "to commit defendant for an evaluation for a §4246(a) certificate"

that can only be granted by the facility under §4241(d) or if he was in the

facility, the time expired under (d)(1), and the Court disposed of the case. At

day 120, as the court did not extend the commitment, defendant was released

from the Custody of the Attorney General, and jurisdiction under 18 U.S.C §4241

expired. The speedy trial clock restarted on March 18, 2025. As of the day

of writing this, that is 147 days. The days defendant was kept longer than

30 days in Seatac, and the 6 months waiting for a bed, as well as at least

12 months of the 14 it took to commit defendant under §4241(d)(1) should

pg. 34

be retolled against the government. By law the statute allows for reasonable delays in a process outlined for 5 months, we are at ~31 months. This is absurd, not reasonable. This isn't even negligence, it is purposeful and done with malice and aforethought. Inmates nickname this process "denial therapy", and are aware it is a tactic to torture a person into submission.

The Court lacks subject matter, territorial and In Personam jurisdiction. It lacks subject matter jurisdiction as it is unconstitutional as applied. Nothing was transmitted in commerce neither intrastate nor interstate. Nor was it a threat as defined by the U.S. Supreme Court in Elonis. Purely intrastate access to a local database server via a free wireless access point in the complete absence of any commercial act is not "interstate commerce". The statute does not employ the term of art "in or affecting interstate commerce" either. Defendant was not in the Eastern District of Michigan nor was the server the text was transmitted to. Nothing was transmitted to or from the Eastern District of Michigan by Defendant.

Today, right now, the Court could query the Twitter server in Texas to see what was "transmitted" to that server by defendant. If that creates territorial jurisdiction then the FBI office in Colorado could query the Server, and charge defendant there as well. They could query it 11 times, and charge defendant for each time they refresh the query. A "tweet" is not like a phone call. I am not sending a tweet to the FBI office in Michigan when they choose to look at what I said. It is not the equivalent of calling the FBI office.

I have learned when interacting with the U.S. injustice system that I have to preface the next argument. I am going to use the word "Sovereign", but I am not making a "Sovereign Citizens" argument. This argument was screened by the U.S. Supreme Court in case 23-7731 under 28 U.S.C. 1915(e)(2)(B) as well as Federal Rules of Habeas Corpus procedure and found to be "non-frivolous" and "potentially meritorious". But I've learned that once the word "Sovereign" is mentioned, you've all been trained to shut your brains down, and your eyes

gloss over.

Sovereign Citizens believe they are citizens under Article 4 Section 2 Clause 1 "Citizens in the Several States" with different privileges and immunities than 14th Amendment Citizens. The US Supreme Court discusses this distinction in the "Slaughterhouse Cases" overturned for other reasons. They call one set "de facto US citizens" and the other set "de jure US Citizens". They believe that 14th Amendment citizens are "persons" and Article 4 citizens are "the People". Since 1 U.S.C. §1 defines "person" as a corporation, the U.S. government made them a "person" to subject them to the Interstate Commerce Clause. They are trying to find a way to be viewed as one of "the People" a "flesh and blood human". People commit fraud and charge money for various schemes to "take control of your strawman". There is a lot of fact in that argument used to reach an absurd conclusion. You could find a way to explain the errors in it if you listened more, and dismissed less. But this argument has nothing to do with that

argument at all. We are going to discuss the Law of Nations and Federal common law. Foreign nations, not subtle nuance between two distinct US citizens. The only similarity is the word "Sovereign".

"The very term 'nation' ... means 'a people distinct from others'. Distinct, independent political communities, retaining their natural rights". (Worcester v. State, 6 Pet. 515, 8 L. Ed. 483, 31 US. 515 (Jan 31, 1832)). According to international law, 'a state is an entity that has a defined territory and a permanent population, under the control of its own government, and that engages in or has the capacity to engage in, formal relations with other entities." (Doe v. Islamic Salvation Front (FIS), 993 F. Supp. 3 (D.D.C. 1998)). More specifically, a nation is an independant jural society, distinct from others, with the right to Independence, Equity, Dignity, and Property, among others. It is not "granted permission" to exist by another entity, nor is its existence conditioned upon "recognition" or "acknowledgment" of some foreign entity. This is the very essence of the right to "self determination". A nation exists because it declares itself to exist, see United States Declaration of Independence.

A "State" is simply "a Nation with territory". A nation must pre-exist a state, even if the nation seems to exist and lay claim to a territory in a single act, as many often do.

All internal acts of a nation, whether it is selecting an individual to be vested with its sovereignty or laying claim to territory are beyond review of foreign courts. When by treaty England ceded its claim of land to the Colonies at the end of the Revolutionary War, this is viewed under International Law not as England "granting" the land to the Colonies, but as England "recognizing" what was true when the Colonies laid claim to the territory in question. A land dispute between nations is not a question for courts to resolve. It is a political question to be determined by the Executive Branch, by means of diplomacy, reprisals or war. In short, the Court is required to recognize as fact the nation in question exists, as its Declaration of Sovereignty was filed. The territory it claims makes it a "de facto State" to the United States until it is "recognized". Which Sovereign is the "rightful" nation over the territory is not a question that can be brought before the Court. At most, the Court can acknowledge the political dispute exists, but it cannot resolve it.

"The Court may take judicial notice of the fact that defendant is a government with which the United States is not on friendly terms and which it has not recognized. (U.S. v. Palmer, 3 Wheat. 610; The Divina Pastora, 4 Wheat. 52; The Nueva Anna, 6 Wheat. 193; Oetjen v. Central Leather Co., 246 U.S. 297; Emperor of Austria v. Day, 3 De.G.F. 3 J. 217; Republic of Peru v. Peruvian Guano Co., 36 Ch. Div. 489; Republic of Peru v. Dreyfus, 38 Ch. Div. 348; Taylor v. Barclay, 2 Sim. 213, Rose v. Himley, 4 Cranch, 241; Jones v. U.S., 137 U.S. 202)

"[T]he existence of such a government whenever it becomes material may probably proved in other ways." (Yrisarri v. Clement, 3 Bing. 432; The Charkich, L.R. 4A 3 E59)

"[R]ecognition does not create the state although it may be desirable ... Also in the country granting the recognition, that act is conclusive as to the existence of the government recognized." (Taylor v. Barclay, 2 Sim. 213; Republic of Peru v. Dreyfus Bros. 3 Co. L.R. 38 Ch. Div. 348; Republic of Peru v. Peruvian Guano Co. L.R. 36 Ch. Div. 489)

"[E]very government, in its dealings with others, necessarily partakes, in many respects, of the character of a corporation. It must, of necessity, be treated as a body having perpetual Succession." (The king of two Sicilies v. Wilcox (1. Sim. [N S] 301)

A monarch of a foreign nation is the representative of the Sovereignty of the nation. In the case "The Schooner Exchange v. McFaddon, 7 Cranch, 117" the U.S. Supreme Court uses the term "Prince" interchangeably with nation and state. The monarch is the Sovereign who is the nation, and it is the Sovereigns who are perfectly equal under the Law of

nations, and as equals, they cannot "impose" their laws on one another through their courts without agreement.

"All Sovereign power was vested by [Law] in a single person, the king or queen." 1 W. Blackstone, Commentaries *183

"The Law ascribes to the King the attribute of Sovereignty or preeminence." 1 W. Blackstone, Commentaries *241

"The King is Sovereign and independent and owes no kind of subjection to any other potentiate on earth." (Chisholm v. Georgia (2 Dall.) 419, 446, 1 L.Ed. 440 (1793))

"Sovereign Immunity also emanates from the conceit of the perfect equality and absolute independence of sovereigns under... international law." (Hyatt III, 587 U.S. at 139 S. Ct. at 493)

It has been long recognized that the Common Law and Law of Nations affords Exterritoriality or Sovereign Immunity to Foreign Sovereigns whether the Sovereign is a de facto State or a recognized State. As an item of first impression for your courts or rather for clarity of the Law of Nations and Common Law, defendant argues that the Sovereign is the representative of the Nation, and that "defacto State" and "recognized State" are merely conditions that a Nation may exist in. They are "properties" a Nation may possess, but

Independence, Equity, and Dignity as well as the right to property belong to the Nation regardless of condition of State hood. As such, the Sovereign of a Nation, whether it is a "Wandering Nation", "de facto State" or a "recognized State" is entitled to Sovereign Immunity.

"Defendant as a de facto State is immune from suit." (The Schooner Exchange v. McFaddon, 7 Cranch 117, Osborn v. Bank of U.S. 9 Wheat. 870; Beers v. State of Arkansas, 20 How. US 527; King of Roumania v. Guaranty Trust Company, 250 F. 341, Porto Rico v. Rosaly, 227 U.S. 270; Kawananakawa v. Polybank, 205 U.S. 349; Matter of Hoeple, 179 N.Y. 308; Manning v. State of Nicaragua, 14 How. Pr. 517; Leavitt v. Dabney, 31 How. Pr. 264; Hassard v. United States of Mexico, 29 Misc. 511)

"[a de facto state] is susceptible to no limitations not imposed by itself. This is the result of independence ... [U.S. Courts] may not bring a foreign Sovereign before [their] bar, not because of comity, but because he has not submitted himself to [their] Laws. Without his consent, he is not subject to them. Concededly that is so to a foreign government that has received recognition. (The Schooner Exchange v. McFaddon, 7 Cranch, 116; Porto Rico v. Rosaly, 227 U.S. 270; Oetjen v. Central Leather Co. v. United Fruit Co., 213 U.S. 347, Ricaud v. American Metal Co., 246 U.S. 304; Hassard v. United States of Mexico, 29 Misc. 511; Mason v. Intercolonial Railway, 197 Mass 349; Wadsworth v. Queen of Spain, 17 Q.B. 171; ~~Queen~~ Vavasseur v. Krupp, L.R. 9. Ch. Div. 351; Strousberg v. Costa Rica, 44 L.T. 199) But whether recognized or not the evil of such an attempt would be the same ... In either case, to do so would 'vex the peace of nations'" (Wulfsohn v. Russian Socialist Federated Soviet Republic, 234 N.Y. 372 (N.Y. 1923))

The Court must find as a fact that the Nation defendant contends exists does in fact exist. The Court must also find that Defendant is the Sovereign Monarch of that Nation. These are facts the Court is not at liberty to question nor ignore. The Court must decide what condition this Nation exists politically in relation to the U.S. meaning is it a "Wandering Nation", "de facto State" or a "recognized State", but after that it must admit that it has no power to put defendant before it's bar, and dismiss the case with prejudice.

The government has no refutation to this outside of trying to prevent the question from being before the court by abusing 18 U.S.C. §4241 in an attempt to discredit it by having legally ignorant, and frankly inept psychologists deem the argument "a delusion".

"[M]eritless legal arguments do not evidence confusion of legal proceedings" (U.S. v Brown 669 F.3d. 10, 18 (12ᵗ Cir. 2012)) "Religious beliefs, Political beliefs, and arguments lacking legal merit do not equate to incompetence" (State v. Knecht, 568 N.W. 2d 37, 209 Wis 2d 600 (Wis App 1997)) "[U]nusual political beliefs do not imply mental instability or concrete intellect so deficient as to render a trial impossible." (U.S. v Jones, 328 F.3d, 955 (7ᵗʰ Cir 2003) "[V]oluminous filings of nonsensical pleadings do not create serious doubt of competency." (US v. Neal, 776 F.3d. 645, 656-57 (9ᵗʰ Cir. 2015)) "Merely believing fringe views does not mean someone cannot cooperate with his lawyer or understand the proceedings." (U.S. v. Gooch, 595 Fed. Appx. 524, 527 (6ᵗʰ Cir. 2014))

" Defendant is a 'knowing participant in his defense' supported by the fact that he 'took notes, conversed with counsel, and reacted reasonably to the admission of evidence." (U.S. v Sonie, 122 F.3d 122,127 (2nd Cir 1997))

The first amendment protects Religious Beliefs, Political Beliefs, as well as general beliefs that fall into neither category. Accepted beliefs do not need first amendment protection, but they still enjoy it. The first amendment is most necessary to protect people when they possess uncommon, unpopular, and beliefs others may view as irrational or immoral or wrong. The first amendment is freedom of conscience, the right to believe any opinion free from the interference of others. The first amendment is the freedom to believe, and the freedom to act. The freedom to act is conditioned upon the necessary restraints of the rights of others. The freedom to believe is absolute.

The right to believe is no longer absolute if you can be denied the right to a trial if a psychologist declares your beliefs "delusions" because they deem them irrational, and since they are irrational you cannot "factually and rationally" understand the proceedings nor consult with counsel with a reasonable degree of "rational" understanding. Especially

when they are negligent with facts, and behave like the tenth person in the game of telephone. For example, you say things like "Pfizer paid the largest criminal fine in US History" and "The COVID pandemic was a nation-state level psychological operation" and they exclaim your beliefs are "He believes Pfizer is a Nation-state". I'm not entirely convinced the numerous blatant untruths like that in both psychological reports are mere negligence. I feel one has to put effort into being that incorrect in relating another's beliefs. Mr. Goldsmith in his order committing defendant invented a defense that defendant supposedly intended to make that is found nowhere in the record.

For these reasons, and to preserve defendant's rights, this Writ should be granted.

## Relief Requested

Pro se filings are to be liberally construed, and it is the duty of the Court to find justice, and the Law. Defendant requests any relief available by law, which includes but is not limited to: Dismissing the case for lack of jurisdiction, subject matter, territorial, or In Personam; a finding defendant was punished absent due process; a finding defendant's substantive and procedural due process rights have been violated; a finding defendant was found incompetent in clear error; removal of defense counsel; a finding defendants pro se motions were struck in clear error; retolling of the days for speedy trial clock; release from custody; a finding defendant was denied 6th Amendment right to counsel; a finding of ineffective assistance of counsel; a finding of malicious prosecution; and any other relief available from the record.

## Conclusion

In Conclusion this Writ Should be granted on its merits

Jach Cypres [signature]
⊗

I certify that petitioner cannot afford to make two copies of this petition nor afford postage to mail them to U.S. Attorney General Pamela Bondi, nor FDC Milan Warden E. Rardin. U.S. Supreme Court rules explain that an inmate in an institution who is granted pauper status need only file the original copy with the court, and the Court then must serve those required under the Law. Federal Rules of Civil Procedure also state that the Court can be requested by a person granted pauper status to serve those required by law to be served. A writ of Habeas Corpus petition is a "separate civil action" than a criminal case. As per Court rules and law, petitioner requests the Court serve the following persons:

| U.S. Attorney General Pamela Bondi | FDC Milan Warden E. Rardin |
|---|---|
| 950 Pennsylvania Ave. NW Suite 7141 | P.O. Box 1000 |
| Washington, DC 20530 | Milan, Mi 48160 |

Jach Cypres [signature] ☐ ng
⊗



Jack Carpenter #45173510
FDC Milan
P.O. Box 1000
Milan, MI 48160

Clerk of the Court of the
Eastern District of Michigan
Southern Division
Theodore Levin US Court house
231 W Lafayette blvd. 5th Fl.
Detroit, MI 48226

Marchex MI 484 ZIP
FRI 05 SEP 2025 PM 4 L

RECEIVED
SEP 10 2025
CLERK'S OFFICE
U.S. DISTRICT COURT

U.S. MARSHALS